# EXHIBIT 1

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** THE PAUL REVERE LIFE INSURANCE
**(AVISO AL DEMANDADO):** COMPANY, and DOES 1 through 10 inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** MICHAEL YSASAGA
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 18 2016

Sherri R. Carter, Executive Officer/Clerk
By Cristina Grijalva, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

**¡AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es:)
Superior Court of California, County of Los Angeles
111 North Hill Street
Los Angeles, California 90012

CASE NUMBER:
(Número del Caso):
BC 617352

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Samuel L. Bruchey
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
SHERNOFF BIDART ECHEVERRIA BENTLEY LLP
301 N. Canon Drive #200, Beverly Hills, California 90210          310-246-0503

DATE: APR 18 2016          Clerk, by CRISTINA GRIJALVA          Deputy
(Fecha)          SHERRI R. CARTER  (Secretario)          (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):
3. [X] on behalf of (specify): The Paul Revere Life Insurance Company
   under: [X] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] other (specify):
4. [X] by personal delivery on (date):

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

Page 1 of 1

EXHIBIT 1          12



1  WILLIAM M. SHERNOFF #38856
2  SAMUEL L. BRUCHEY #271995
   COOPER JOHNSON #299894
3  SHERNOFF BIDART
   ECHEVERRIA BENTLEY LLP
4  301 North Cañon Drive, Suite 200
5  Beverly Hills, CA 90210
   Telephone: (310) 246-0503
6  Facsimile: (310) 246-0380
7
8  Attorneys for Plaintiff

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

APR 1 8 2016

Sherri R. Carter, Executive Officer/Clerk
By Cristina Grijalva, Deputy

9        SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10            FOR THE COUNTY OF LOS ANGELES

11

12  MICHAEL YSASAGA,                    Case No.:    BC 6 1 7 3 5 2

13        Plaintiff,                    **COMPLAINT AND DEMAND FOR JURY**
                                        **TRIAL**
14      vs.
15                                      1.  Breach of Contractual Duty to Pay a
                                            Covered Claim
16
17  THE PAUL REVERE LIFE INSURANCE      2.  Breach of the Duty of Good Faith and
    COMPANY; and DOES 1 through 10          Fair Dealing
18  inclusive,
19        Defendants.
20
21
22
23
24
25
26
27
28

- 1 -
COMPLAINT AND DEMAND FOR JURY TRIAL

**EXHIBIT 1**

13

## INTRODUCTION

1.   This insurance bad faith case arises from the unreasonable denial of disability insurance benefits by Defendant Paul Revere Life Insurance Company ("Paul Revere"). Plaintiff Michael Ysasaga had been practicing dentistry for over 20 years when he started to experience upper back and neck pain, and numbness in his right index finger and thumb. When his conditions worsened, forcing Michael to close his practice, he submitted a claim to Paul Revere under his "own occupation" disability policy. Paul Revere initially found Michael totally disabled from performing the duties of a dentist, but after a year of paying benefits, it launched an investigation aimed at denying his claim. Paul Revere was repeatedly confronted with evidence supporting Michael's disability, but its efforts for finding any basis to deny his claim were tenacious. Ultimately, even though Michael's physicians concluded that Michael was disabled from practicing dentistry, and that his condition would probably never improve, Paul Revere denied the claim. The denial was a shock to Michael. Just before receiving the denial letter, Michael had gone to a physician whose findings supported his disability.

2.   Michael brings this lawsuit in order to recover for the denied benefits, the emotional distress caused by the denial, and all other consequential damages caused by the denial.

## THE PARTIES

3.   Plaintiff Michael Ysasaga was a citizen of California when he purchased the disability policy through Defendant.

4.   Defendant The Paul Revere Life Insurance Company is a corporation organized and existing under the laws of Massachusetts and is authorized to transact, and is transacting, the business of insurance in California.

5.   The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 10 inclusive are unknown to Michael, who therefore sues these defendants by such fictitious names. Michael alleges upon information and belief that each of the DOE defendants is legally responsible in some manner for the events and happenings referred to herein and will ask leave of this court to amend this

- 2 -

COMPLAINT AND DEMAND FOR JURY TRIAL

1  complaint to insert their true names and capacities when they become known.

2        6.   At all relevant times, Paul Revere Life Insurance Company and the DOE

3  defendants were the agents and employees of each other and were at all times acting within

4  the purpose and scope of said agency and employment, and each defendant ratified and

5  approved the acts of its agent.

6  **FACTUAL BACKGROUND**

7        7.   In 1993, Plaintiff Michael Ysasaga opened his own dental practice in Chico,

8  California.

9        8.   Just after opening his practice, Michael purchased a disability income policy

10  (the "Policy," number 0102618723) from The Paul Revere Life Insurance Company ("Paul

11  Revere"), which became effective on June 2, 1993. (A copy of the Policy is attached as Exhibit

12  A to this complaint.)

13        9.   The Policy promised to pay benefits until age 65 in the event that Michael

14  became disabled from his own occupation.

15        10.   As a dentist, Michael frequently had to lean over patients and perform

16  repetitive manipulations with his right hand, which required tactile sensitivity and fine motor

17  skills.

18        11.   Starting in around 2009, Michael started to experience back and neck pain with

19  intermittent numbness and tingling in his right hand, which worsened while he was working.

20  Michael tried taking some time off in 2009 to alleviate the pain, and also tried physical

21  therapy, but the pain and numbness would always return when he started working again.

22        12.   Sometime in early August 2012, Michael's symptoms became more severe and

23  he had to cut back on his procedures and refer patients to other dentists. Michael had pain

24  and numbness in his right index finger and thumb, an ache in his right arm when lifting, and

25  a sharp pain in his upper back and neck whenever he turned his head. This prevented

26  Michael, who was right-handed, from performing procedures that required fine motor skills,

27  tactile sensibility, or leaning forward.

28        13.   In order to treat his condition, Michael began seeing a pain management

- 3 -
COMPLAINT AND DEMAND FOR JURY TRIAL

**EXHIBIT 1**

15

1   specialist (Dr. Robert Egert), a chiropractor (Karen Escott), and a physical therapist (David

2   Pierson).

3       14.     However, after nearly a year of treatment and cutting back his workload,

4   Michael was unable to improve his condition to where he could return to his usual and

5   customary practice of dentistry. Michael gave up his practice and let his lease run out at the

6   end of May 2013.

7       15.     On May 30, 2013, Michael had a cervical MRI performed. The report indicated

8   that Michael had disc degeneration in three different discs (C4-5, C5-6, and C6-7), disc

9   bulging in C4-5 and C5-6, disc protrusion in C5-6, and sagittal canal narrowing without cord

10   compression in C4-5. The report also indicated that the C6 nerve leading into Michael's right

11   arm seemed to be pinched.

12       16.     Dr. Egert concluded that the MRI findings were concordant with an

13   electrodiagnostic test, and Michael's complaints of numbness. He also agreed that Michael's

14   career change was medically justified. Dr. Egert diagnosed Michael with (1) cervical pain, (2)

15   neuropathy/brachial, and (3) abnormal skin sensation. On his report where it asks when the

16   patient "is expected to return to usual and customary work," Dr. Egert circled "never."

17       17.     In June 2013, Michael submitted a claim for total disability to Paul Revere. This

18   included an individual statement, an occupational description, and an authorization for Paul

19   Revere to obtain medical records. Paul Revere received Dr. Egert's attending physician

20   statement later in July. In the statement, Dr. Egert indicated that, based on an EMG, MRI and

21   physical exam, Michael's primary diagnosis was C6 Radiculopathy. It also stated that, because

22   of his current limitations and restrictions, Michael was "[u]nable to perform dental

23   procedures due to impaired sensation and fine motor control." In the space indicating when

24   he expected Michael's limitations and restrictions to improve, Dr. Egert wrote "never."

25       18.     In July 2013, Michael moved to Redlands, California in order to possibly start a

26   career in the mortgage loan business. However, this was only temporary, and lasted from

27   August to September.

28       19.     In September, Paul Revere approved Michael's claim and confirmed his total

- 4 -

COMPLAINT AND DEMAND FOR JURY TRIAL

EXHIBIT 1                                                         16

1    disability as of June 1, 2013. Paul Revere began paying Michael his monthly $4,220 benefit

2    (after a 90-day elimination period).

3        20.    In December, Michael and his family moved again, this time to Texas, in order

4    for Michael to pursue a new line of work. Michael continued treatment with new medical

5    providers in Texas.

6        21.    In April 2014, Michael visited a chiropractor for lower back pain, his upper

7    back/neck pain, as well as the issue with his thumb and index finger. Dana McKirahan, DC,

8    PA, diagnosed Michael with: (1) degeneration of cervical intervertebrate disc, (2) neuralgia,

9    neuritis and radiculitis, (3) degeneration of lumbar or lumosacral intervertebrate disc, and (4)

10   sciatica. He stated that review of previous diagnostic studies indicated disc degeneration,

11   bulges, and/or protrusions at the C5-6 and C6-7 levels (as shown on the MRI) and chronic

12   denervation-reinnervation in the right C6-7 innervated musculature (as shown on the EMG

13   study).

14       22.    In May 2014, Michael began working as a pipeline controller, which was a light

15   job, basically sitting in an office and reading instruments. He informed Paul Revere of this.

16       23.    Towards the end of 2014, Paul Revere suddenly began to doubt Michael's

17   disability, and had its in-house physician review Michael's restrictions and limitations. Even

18   though Michael's attending physicians agreed that Michael was unable to perform dental

19   procedures due to impaired sensation and fine motor control, Paul Revere searched for

20   irrelevant and immaterial pieces of Michael's medical record in order to patch together a

21   reason for calling Michael's restrictions and limitations "uncertain." It did this in order to

22   launch an investigation aimed at denying benefits.

23       24.    The report of Paul Revere's physician (which was in its claim file, but not

24   available to Michael at the time), shows just how determined Paul Revere was to deny

25   Michael's benefits. The physician stressed that Michael "was able to work with symptoms for

26   years" and "was able to perform dental work after 8-05-12 for approximately 10 months, until

27   5-30-13," which ignores the fact that Michael discussed with Paul Revere how his symptoms

28   became worse while working as a dentist. And even though Michael had an "own occupation"

COMPLAINT AND DEMAND FOR JURY TRIAL

SHERNOFF BIDART
ECHEVERRIA BENTLEY LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**EXHIBIT 1**

17

1    policy, the physician pointed out that Michael was "capable of a full time job in a office [sic]

2    reading instruments," which apparently required "neck stresses." The Paul Revere physician

3    also mentioned comments Dr. Egert made *before* fully examining Michael's condition: "Dr.

4    Egert wrote that it was somewhat difficult to justify this from a medical perspective insofar as

5    insured continued to work up until the time that he decides to close his practice." But the Paul

6    Revere Physician did not include that, after the MRI, Dr. Egert revised that position,

7    concluding the opposite: "[Michael's] had several prior episodes which have affected his

8    ability to practice dentistry, and he has decided to change careers. This appears to be

9    medically justified based upon the above findings."

10         25.    The Paul Revere physician also called Michael's chiropractor for an update,

11    and he responded that Michael's cervical spine condition had not improved and that the

12    prognosis for improvement was poor.

13         26.    Unsatisfied that Michael's physicians and their records supported his disability,

14    Paul Revere then hired a physician to perform an "independent medical examination"

15    ("IME") on Michael. After evaluating Michael in person on June 4, 2015, the IME doctor (an

16    orthopedic surgeon), concluded that Michael was "not capable of returning to work as a

17    dentist."

18         27.    Still unsatisfied, Paul Revere requested that the IME doctor perform another

19    cervical MRI and evaluate the MRI from May 2013. After closely reviewing the May 2013

20    MRI, the IME doctor's conclusion that Michael was disabled "remain[ed] unchanged."

21         28.    Still unsatisfied, Paul Revere then ordered another MRI to be performed on

22    November 20, 2015. Paul Revere sent the IME doctor the new MRI and several questions

23    aimed at some, but not all, aspects of Michael's condition that would support denial. The IME

24    doctor agreed with Paul Revere that Michael was not disabled. Paul Revere then promptly

25    decided to discontinue Michael's benefits, without waiting to hear back from one of Michael's

26    physicians.

27         29.    In a February 4, 2016 letter, Paul Revere officially denied Michael's claim and

28    stopped paying his benefits. Its decision was unreasonable for several reasons.

- 6 -

COMPLAINT AND DEMAND FOR JURY TRIAL

**EXHIBIT 1**

18

30.     First, it focused only on one aspect of Michael's disability, numbness in his right index finger and thumb. But Michael, as Paul Revere noted in its denial letter, had several conditions causing his disability: "neck and back pain *and* numbness in your hand[.]" (Emphasis added.) Paul Revere's denial focused solely on the hand numbness and ignored the fact that his back/neck pain could prevent him from performing his duties as a dentist.

31.     Second, not only did Paul Revere proactively search for evidence to disprove Michael's claim, but it relied heavily on this evidence in its denial letter and ignored evidence that proved Michael's disability. For example, Michael's other attending physicians concluded that he was prevented from performing his duties as a dentist, and that his condition would not get better. Even the MRI report that Raul Revere relied on to deny the claim indicated that, although the herniations did not appear to contact the nerve to his right hand, Michael still had disc herniations.

32.     Third, it completely ignored the crucial fact that Michael's condition was exacerbated by working as a dentist. Michael discussed this with Paul Revere before, and Paul Revere knew that even though his condition might have improved with time off work, it would always get worse when he returned. Paul Revere unreasonably concluded that if Michael was exposed to the repetitive motions of dentistry again, that he would be able to perform the important duties in the usual and customary way and with reasonable continuity.

33.     Fourth, Paul Revere knew that Michael had struggled years before, unsuccessfully, to treat his symptoms, but Paul Revere used that against him. One of the reasons Paul Revere doubted his disability was that Michael was "able to work with symptoms for years" and that he was "able to perform [his] occupational duties after August 5, 2012 (the first date of treatment) for approximately 10 months[.]" This ignores the fact that, after the May 2013 MRI (just after Michael closed his practice), Dr. Egert said that switching careers was "medically justified" based on the findings.

34.     Fifth, Paul Revere even went so far as misrepresenting the findings of the November 20, 2015 MRI report in order to justify its denial. The denial letter stated, "This report described no disc herniation," but the report itself clearly reads, in two places:

- 7 -

COMPLAINT AND DEMAND FOR JURY TRIAL

EXHIBIT 1                    19

1   C4-C5: a 3 mm central and left-sided disc herniation. Compression of the

2   left anterior and lateral thecal sac with cord compression. Increased signal

3   within the posterior margin of the C4-C5 disc herniation which may be

4   seen in acute to subacute herniations.

5   This is a critical fact because Michael's disability was not just the numbness in his right hand

6   (potentially caused by a C5-6 herniation), but also neck pain.

7       35.   When Michael read the denial letter, he was shocked. Not only did he still have

8   symptoms in his neck and right hand, but, on the same day of the denial letter, he visited a

9   physician whose findings supported Michael's disability. Specifically, a physical examination

10  indicated that Michael still had "intermittent right index and thumb numbness," and an X-

11  Ray of his cervical spine showed mild degeneration, disc space reduction, and spondylosis

12  from C4-C5 through C6-C7. Had Paul Revere searched for ways to support Michael's claim,

13  as the duty of good faith and fair dealing requires it to do, Paul Revere would have discovered

14  evidence proving Michael's disability.

15      36.   Michael brings this lawsuit in order to recover for the denied benefits, the

16  emotional distress caused by the denial, and all other consequential damages caused by the

17  denial.

18                    **FIRST CAUSE OF ACTION:**

19      **BREACH OF CONTRACTUAL DUTY TO PAY A COVERED CLAIM**

20      37.   Michael refers to all preceding paragraphs and incorporates them as if set forth in

21  full in this cause of action.

22      38.   Paul Revere owed contractual duties and obligations to Michael under the Policy,

23  including the duty to pay Michael's claim.

24      39.   Michael performed all of his obligations under, and satisfied all conditions of, the

25  Policy.

26      40.   Paul Revere breached the terms and provisions of the Policy by refusing to pay the

27  promised benefit of the Policy.

28      41.   As a direct and proximate result of Paul Revere's conduct and breach of its

- 8 -
COMPLAINT AND DEMAND FOR JURY TRIAL

**EXHIBIT 1**

20

SHERNOFF BIDART
ECHEVERRIA BENTLEY LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1  contractual obligations, Michael has suffered damages in an amount to be proven at trial.

2  SECOND CAUSE OF ACTION:

3  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

4  42.  In every insurance policy there exists an implied duty of good faith and fair

5  dealing that the insurance company will not do anything to injure the right of the insured to

6  receive the benefit of the policy. Paul Revere breached its duty of good faith and fair dealing

7  owed to Michael in the following respects:

8  a)  Failing to perform and full, fair, and thorough investigation of Michael's

9  disability;

10  b)  Unreasonably and in bad faith failing to consider its insured's interests at least

11  as much as its own in handling Michael's claim;

12  c)  Unreasonably and in bad faith failing to diligently search for reasons to

13  support Michael's claim and instead proactively searching for ways to deny the

14  claim;

15  d)  Unreasonably and in bad faith ignoring crucial information that supported

16  Michael's claim;

17  e)  Unreasonably and in bad faith misrepresenting medical findings in order to

18  justify denying Michael's claim;

19  f)  Unreasonably and without proper cause refusing to pay the benefit owed under

20  the Policy;

21  43.  Michael is informed and believes and thereon alleges that Paul Revere breached

22  its duty of good faith and fair dealing by other acts or omissions of which he is presently

23  unaware, but which will be shown according to proof at trial.

24  44.  Paul Revere furthermore committed institutional bad faith. Paul Revere's

25  institutional bad faith amounts to reprehensible conduct because the conduct is part of a

26  repeated pattern of unfair practices and not an isolated occurrence. The pattern of unfair

27  practices constitutes a conscious course of wrongful conduct that is firmly grounded in the

28  established company policy of Paul Revere.

- 9 -

COMPLAINT AND DEMAND FOR JURY TRIAL

EXHIBIT 1                                21

45.   Paul Revere's institutional bad faith includes using its claim department to achieve a certain number or percentage of claim denials per year in order to save money and increase profits.

46.   Michael is informed and believes and thereon alleges that Paul Revere has committed institutional bad faith by other acts or omissions of which he is presently unaware and which will be shown according to proof at time of trial.

47.   Paul Revere's conduct was undertaken by its managers or managing agents, who were responsible for claims supervision and operations, communications and decisions. This conduct was undertaken on behalf of Paul Revere. Paul Revere, further, had advance knowledge of the actions and conduct of said individuals whose actions and conduct it ratified, authorized and approved.

48.   As a direct and proximate result of Paul Revere's breach, Michael has suffered and will continue to suffer damages. These damages include the withheld benefit of the Policy, interest on the withheld payments as well as other general and special damages, of a total amount to be shown at trial.

49.   As a further proximate result of the aforementioned unreasonable conduct of Paul Revere, Michael was compelled to retain legal counsel to obtain the benefit due under the Policy. Therefore, Paul Revere is liable to Michael for those attorney fees, witness fees and costs of litigation reasonably necessary and incurred in order to obtain the Policy's benefits.

50.   Paul Revere intended its conduct to cause injury to Michael. Alternatively, Paul Revere engaged in despicable conduct, carried out with a willful and conscious disregard of Michael's rights or subjected Michael to cruel and unjust hardship in conscious disregard of his rights. Alternatively, Paul Revere's conduct constituted an intentional misrepresentation, deceit or concealment of a material fact known to Paul Revere with the intention of depriving Michael of property, legal rights or of causing other injury. Paul Revere's conduct therefore constitutes malice, oppression or fraud under California Civil Code §3294, entitling Michael to punitive damages in an amount appropriate to punish or set an example of Paul Revere and deter future similar conduct.

- 10 -

COMPLAINT AND DEMAND FOR JURY TRIAL

EXHIBIT 1                                                                                      22

**PRAYER FOR RELIEF**

Michael respectfully requests that this court enter judgment against each defendant. The final judgment should set forth the following relief:

1.  Contractual, consequential and incidental damages for Paul Revere's breach of contract, in an amount to be determined at trial, plus interest;

2.  General and special damages, including damages for emotional and mental distress and prejudgment interest, for Paul Revere's breach of the duty of good faith and fair dealing, in an amount to be determined at trial;

3.  Punitive damages for Paul Revere's breach of the duty of good faith and fair dealing committed with fraud, malice or oppression, in an amount to be determined at trial;

4.  Treble damages for unfair or deceptive practices against a disabled person, pursuant to California Civil Code section 3345;

5.  Attorney fees incurred, pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, in recovering amounts due under the Policy;

6.  Costs of suit incurred herein; and

7.  Such other and further relief as the court deems just and proper.

Dated: April 15, 2016

SHERNOFF BIDART
ECHEVERRIA BENTLEY LLP

By: _____

WILLIAM M. SHERNOFF
SAMUEL L. BRUCHEY
COOPER JOHNSON
Attorneys for Plaintiff

- 11 -
COMPLAINT AND DEMAND FOR JURY TRIAL

EXHIBIT 1                                                23

1                                 **JURY DEMAND**

2        Plaintiff hereby demands a jury trial on all causes of action that can be heard by a jury.

3

4   Dated: April 15, 2016             SHERNOFF BIDART

5                           ECHEVERRIA BENTLEY LLP

6

7                           By: _____

8                              WILLIAM M. SHERNOFF

9                              SAMUEL L. BRUCHEY

10                             COOPER JOHNSON

11                            Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -

COMPLAINT AND DEMAND FOR JURY TRIAL

EXHIBIT 1          24

# EXHIBIT "A"

EXHIBIT 1                    25



# THE PAUL REVERE
## LIFE INSURANCE COMPANY

**18 CHESTNUT STREET**
**WORCESTER, MASSACHUSETTS 01608**

The Paul Revere Life Insurance Company will pay the benefits provided in this Policy for loss due to Injury or Sickness.

We have issued this Policy to You in consideration of the payment of the premium and the statements made in Your application. Your application is part of the Policy.

| | |
|---|---|
| **Insured** | MICHAEL A YSASAGA DDS |
| **Owner** | THE INSURED |
| **Policy Number** | 01026187230 |

JUN 02, 1993     **Date of Issue**

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65. NO CHANGE IN PREMIUM RATES.** As long as the premium is paid on time, We cannot change Your Policy or its premium rate until Your 65th birthday.

**RENEWAL OPTIONS AFTER YOU REACH AGE 65. SUBJECT TO CHANGE IN PREMIUM RATES.** You may continue Your Policy for a Total Disability benefit while:

1. You are actively and regularly employed at least 30 hours per week; and
2. You are responsible for the expense of maintaining an office or business; and
3. The premium is paid on time.

If these conditions are not met Your Policy will end. There is no age limit for renewal. However, as of age 75 benefits will be reduced as explained in PART 7.

**YOUR RIGHT TO CANCEL.** If You are not satisfied with Your Policy, You may cancel it. Return the Policy to Us or Our agent by midnight of the tenth day after the date You receive it. If You return the Policy by mail, it must be properly addressed, postage prepaid, and postmarked no later than midnight of that tenth day. Our mailing address is 18 Chestnut Street, Worcester, Massachusetts 01608. Within ten days after We receive the Policy, We will refund any premium You have paid. The Policy will be considered to have never been issued.

**READ YOUR POLICY CAREFULLY.** It is a legal contract between You and Us.

Signed for The Paul Revere Life Insurance Company.

*John H. Budd*
Secretary

*Charles E. Soule*
President

CHARTERED IN MASSACHUSETTS

DISABILITY INCOME POLICY
BUSINESS OVERHEAD EXPENSE POLICY

908.1 CA

92-5

**EXHIBIT 1**

26

## Table of Contents

| | Page |
|---|---|
| Renewal Provisions | 1 |
| Your Right to Cancel | 1 |
| Policy Schedule | 3 |
| Part 1 — Definitions | 6 |
| Part 2 — Benefits | |
|     Total Disability Benefit | 8 |
|     Survivor Benefit | 8 |
|     Accumulation Benefit | 9 |
|     Extension of Benefits | 9 |
|     Presumptive Total Disability | 9 |
|     Partial Disability | 9 |
|     Limited Right to Reduce Benefits | 10 |
|     Conversion Privilege | 10 |
| Part 3 — Exclusions | 11 |
|     Pre-existing Conditions Limitation | 11 |
| Part 4 — Premium and Reinstatement Disability | 11 |
| Part 5 — Waiver of Premium | 12 |
| Part 6 — Recurrent and Concurrent Disability | 12 |
| Part 7 — Renewal Option | 13 |
| Part 8 — Claims | 13 |
| Part 9 — The Contract | 14 |

A copy of Your application, added benefits You have purchased, and any added provisions are attached at the back of this Policy.

**EXHIBIT 1**        27

POLICY SCHEDULE

POLICY NUMBER:   0102618723                DATE OF ISSUE:  JUN 02, 1993

INSURED:         MICHAEL A YSASAGA DDS

OWNER:           THE INSURED

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUMMARY OF PREMIUM  PREFERRED NONSMOKER

```
ANNUAL PREMIUM FOR DISABILITY BENEFITS       $1,320.40
ANNUAL PREMIUM FOR ADDITIONAL BENEFITS          $53.40
TOTAL ANNUAL PREMIUM                         $1,373.80
*SELECT 20 ANNUAL PREMIUM                    $1,099.04

YOUR MONTHLY PREMIUM                            $95.07
    DRAFT PLAN
```

\*YOU HAVE A SELECT PREMIUM AS INDICATED.
THIS PREMIUM WILL REMAIN IN EFFECT UNTIL YOUR 65TH BIRTHDAY.  IT IS
SUBJECT TO CHANGE IF YOU RENEW YOUR POLICY AFTER YOUR 65TH BIRTHDAY.

DURING THE 1ST POLICY YEAR ONLY, YOUR MONTHLY PREMIUM IS    $80.81

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TABLE OF DISABILITY BENEFITS

| COMMENCEMENT DATE | MAXIMUM COVERED MONTHLY EXPENSE BENEFIT | MAXIMUM BENEFIT PERIOD* | MAXIMUM TOTAL BENEFIT |
|---|---|---|---|
| 31ST DAY | $6,000.00 | 15 MONTHS | $90,000.00 |

\*BENEFITS MAY BE EXTENDED BY THE EXTENSION OF BENEFITS SECTION IN YOUR
POLICY.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MODIFICATION OF COVERAGE

NONE.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
908          DISABILITY INCOME POLICY FOR BUSINESS OVERHEAD EXPENSE     91-1

**EXHIBIT 1**                                                            28

```
                          POLICY SCHEDULE

POLICY NUMBER:  0102618723              DATE OF ISSUE:  JUN 02, 1993

INSURED:        MICHAEL A YSASAGA DDS

POLICY OWNER:   THE INSURED

*********************************************************************

                    TABLE OF ADDITIONAL BENEFITS

    ADDITIONAL           AMOUNT OF          MAXIMUM         ANNUAL PREMIUM
BENEFITS ATTACHED         BENEFIT        BENEFIT PERIOD     PRIOR TO AGE 65

FUTURE COVERED                        |               |
EXPENSE OPTION                        |               |
UNIT OF INCREASE:       $1,000.00     |      --       |        $53.40
MAXIMUM # OF UNITS:      10 UNITS     |               |
EXPIRATION DATE:      JUN 02, 2011    |               |
(876)                   ---------------------------------------------
```

EXHIBIT 1                                    29

POLICY SCHEDULE II

POLICY NUMBER: 0102618723                    DATE OF ISSUE:  JUN 02, 1993

INSURED:        MICHAEL A YSASAGA DDS

OWNER:          THE INSURED

**************************************************************************

AUTOMATIC INCREASES

$300 WILL BE AUTOMATICALLY ADDED TO YOUR MAXIMUM COVERED MONTHLY EXPENSE
BENEFIT WITHOUT EVIDENCE OF INSURABILITY.  THIS WILL BE DONE ON EACH
INCREASE DATE.

THESE INCREASES ARE SUBJECT TO THE TIMELY PAYMENT OF THE PROPER PREMIUM.
THESE PREMIUMS ARE BASED UPON YOUR ATTAINED AGE ON THE INCREASE DATE.  THEY
ARE LISTED BELOW.

| INCREASE DATE | MONTHLY COVERED INCREASE EXPENSE BENEFIT | ANNUAL PREMIUM INCREASE |
|---|---|---|
| JUN 02, 1994 | $300.00 | $52.37 |
| JUN 02, 1995 | $300.00 | $53.54 |
| JUN 02, 1996 | $300.00 | $54.70 |
| JUN 02, 1997 | $300.00 | $55.85 |
| JUN 02, 1998 | $300.00 | $57.02 |
| TOTAL INCREASE | $1,500.00 | $273.48 |

YOUR MAXIMUM TOTAL BENEFIT WILL INCREASE BY   $22,500.00

A BENEFIT INCREASE WILL APPLY ONLY TO A DISABILITY WHICH STARTS AFTER THE
INCREASE DATE.  IT WILL NOT APPLY TO A CONTINUATION OF A PRIOR DISABILITY.
SEE THE RECURRENT DISABILITY SECTION OF THIS POLICY.  IF THE PREMIUM FOR
THE POLICY IS BEING WAIVED (SEE WAIVER OF PREMIUM SECTION) ON THE INCREASE
DATE, THE PREMIUM FOR THE INCREASE WILL ALSO BE WAIVED.  WHEN YOU RESUME
PAYING PREMIUMS FOR THE POLICY, YOU MUST ALSO START PAYING THE PREMIUM
FOR THE INCREASE.

YOU MAY REFUSE AN INCREASE BY NOTIFYING US IN WRITING 30 DAYS PRIOR TO THE
INCREASE DATE.  YOUR REFUSAL OF AN INCREASE WILL NOT AFFECT THE REMAINING
AUTOMATIC INCREASES.  HOWEVER, IF YOU REFUSE THE FIRST TWO CONSECUTIVE
INCREASES ALL FURTHER INCREASES WILL BE CANCELLED.

PRIOR TO YOUR 60TH BIRTHDAY, YOU MAY APPLY FOR ADDITIONAL AUTOMATIC
INCREASES.  YOU CAN DO THIS BY MAKING FORMAL APPLICATION WITHIN THE PERIOD
OF 60 DAYS PRIOR TO AND 31 DAYS AFTER THE LAST INCREASE DATE SHOWN ABOVE.
APPROVAL WILL BE SUBJECT TO OUR UNDERWRITING GUIDELINES.

EXHIBIT 1                                    30

## PART 1
## DEFINITIONS

THE FOLLOWING WORDS HAVE SPECIAL MEANINGS. THEY ARE IMPORTANT IN DESCRIBING YOUR RIGHTS AND OUR RIGHTS UNDER THE POLICY. REFER BACK TO THESE MEANINGS AS YOU READ YOUR POLICY.

1.1 "Policy" means the legal contract between You and Us. The Policy, the application, the Policy Schedule, and any attached papers that We call riders, amendments, or endorsements make up the entire contract between You and Us.

1.2 "You" and "Your" refer to the Insured named in the Policy Schedule.

1.3 "Owner" refers to the person or entity named as Owner in the Policy Schedule.

1.4 "We" and "Us" refer to The Paul Revere Life Insurance Company. Our Home Office is 18 Chestnut Street, Worcester, Massachusetts 01608.

1.5 "Date of Issue" means the date that the Policy becomes effective. It is shown on the Policy Schedule.

1.6 "Injury" means accidental bodily injury sustained after the Date of Issue and while Your Policy is in force.

1.7 "Sickness" means sickness or disease which first manifests itself after the Date of Issue and while Your Policy is in force. It includes Disability due to complications of pregnancy or childbirth. It includes Disability due to normal pregnancy or childbirth after You have been Disabled for 90 days.

1.8 "Physician" means any licensed practitioner of the healing arts practicing within the scope of his or her license. A Physician must be a person other than You.

1.9 "Physician's Care" means the regular and personal care of a Physician which, under prevailing medical standards, is appropriate for the condition causing the Disability.

If the condition causing the Disability is a Mental Disorder and/or Substance Use Disorder, the appropriate care must be approved by Us. We may require a written plan of care from Your Physician.

Such care must be:
   a.  consistent with the nature of the disorder; and
   b.  intended to return You to Your Occupation. We may waive this requirement depending on the severity of Your disorder.

1.10 "Mental Disorder and/or Substance Use Disorder" means any disorder classified in the Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association (APA). Such disorders include psychotic, emotional, or behavioral disorders, or disorders relatable to substance abuse or dependancy. If that manual is discontinued, We will use the replacement chosen by APA.

1.11 "Your Occupation" means the occupation or occupations in which You are regularly engaged at the time Disability begins.

1.12 "Total Disability" means that because of Injury or Sickness:
   a.  You are unable to perform the important duties of Your Occupation; and
   b.  You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

EXHIBIT 1                                    31

1.13 **"Partial Disability"** means that because of Injury or Sickness:
    a.   You are:
        (1)  Unable to perform one or more of the important duties of Your Occupation; or
        (2)  Unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and
    b.   You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You; and
    c.   You are not Totally Disabled.

Partial Disability must follow right after a period of Total Disability that continues at least to the Commencement Date.

1.14 **"Disability"** or **"Disabled"** refers to a continuing period of Total, and/or Partial Disability.
    Successive periods will be deemed to be continuing if:
    a.   Due to the same or related causes; and
    b.   Separated by no more than 6 months.

Otherwise such periods will be deemed to be new and separate Disabilities.

1.15 **"Commencement Date"** is the day shown on the Policy Schedule when Disability benefits begin during a Disability.

1.16 **"Maximum Benefit Period"** is the longest period of time We will pay benefits during a Disability. It is shown on the Policy Schedule. But it may be increased under the EXTENSION OF BENEFITS section in Part 2.

1.17 **"Maximum Covered Monthly Expense Benefit"** is the maximum monthly amount payable under this Policy, except where a larger benefit is payable as described in the Accumulation Benefit.

1.18 **"Maximum Total Benefit"** is the maximum total amount payable for a Disability. This amount is shown on the Policy Schedule. This includes all Disability amounts payable under this Policy.

1.19 **"Cost of Sales or Services"** means Your share of all expenses incurred in Your Occupation directly associated with the generation of income by or for Your business or profession. It includes but is not limited to:
    a.   the salary, other remuneration, including benefits, for:
        (1)  Any member of Your profession; or
        (2)  Any person sharing business expenses with You; or
        (3)  Any person employed to perform your duties; or
        (4)  Any person directly responsible for the generation of income for Your business or profession.

Some other examples of these expenses are:
    b.   Medical or dental supplies
    c.   Lab fees
    d.   X-ray fees

Cost of Sales or Services does not include Your salary or other remuneration for You, including benefits.

7

1.20 **"Covered Monthly Expense"** means those fixed, monthly expenses incurred in Your Occupation that are ordinary and necessary in the operation of Your business or profession.  If You share those expenses with someone else, We will include only Your share.  They include, but are not limited to, such expenses as:

| | |
|---|---|
| a. Rent | g. Office supplies |
| b. Utilities | h. Business liability insurance |
| c. Telephone | premiums |
| d. Employees' wages | i. Professional dues & memberships |
| e. Leased equipment | j. Interest on debt |
| f. Rental equipment | k. Depreciation or scheduled installment payments of principal of debt incurred for purchase of depreciable assets |

At the beginning of a period of Disability You must choose whether to claim depreciation or payment of principal of debt.  The choice can be made only once for each separate Disability.

"Covered Monthly Expense" does not include such expenses as:

a.  Salary, or other remuneration, including benefits, for:
 (1)  You; or
 (2)  Any member of Your family unless that person was employed 60 days prior to Your Disability.
b.  Cost of Sales or Services
c.  Additions to inventory
d.  Travel and entertainment
e.  Expenses for which You were not periodically liable prior to the start of Disability.

# PART 2
# BENEFITS

The monthly benefits payable under this Policy are subject to the terms of Part 8 "Claims."

## 2.1   TOTAL DISABILITY BENEFIT

We will periodically pay a Total Disability benefit during Your continuous Total Disability.

The amount We will pay is equal to the Covered Monthly Expense You actually incur, while Totally Disabled.  The benefit amount payable may exceed the Maximum Covered Monthly Expense Benefit if benefits have been accumulated as described in the Accumulation Benefit.  In no event will the amount payable for a period of Total Disability exceed the Maximum Total Benefit.

This benefit will begin on the Commencement Date. We will continue to pay it while You are Totally Disabled. But We will not pay it beyond the Maximum Benefit Period unless that period is extended by the EXTENSION OF BENEFITS section.

If this benefit is payable for a part of a month, the daily rate We will pay equals: 1/30th of the amount that would have been payable for the whole month.

An expense covering more than one month will be pro rated to determine the expense for each month.

## 2.2   SURVIVOR BENEFIT

If You die after the Commencement Date and prior to age 65, and while You are eligible for Total Disability benefits, We will pay a single sum benefit.  The amount of this benefit will be 1.5 times the Maximum Covered Monthly Expense Benefit.  But the payment of this benefit will not cause the Maximum Total Benefit to be exceeded.  Upon proof of death, We will pay:

a.  The owner of the Policy; or
b.  The person You have named in writing to Us.

*What is the Total Disability benefit?*

*What happens if Insured dies while benefits are payable?*

EXHIBIT 1                                          33

## 2.3    ACCUMULATION BENEFIT

*Can Unused benefits be carried forward?*

The Covered Monthly Expense in any one month of Total Disability may be less than the Maximum Covered Monthly Expense Benefit.  If so, any such unused benefit may be carried forward and applied to the Covered Monthly Expense in a later month of the same period of Total Disability when the Covered Monthly Expense exceeds the Maximum Covered Monthly Expense Benefit.

*Can excess expenses be reimbursed in a later month?*

The Covered Monthly Expense in any one month of Total Disability may be greater than the Maximum Covered Monthly Expense Benefit.  If so, any such excess expense may be carried forward and reimbursed in a later month of the same period of Total Disability when the Covered Monthly Expense is less than the Maximum Covered Monthly Expense Benefit.

In no event will the amount We pay during Total Disability exceed the Maximum Covered Monthly Expense Benefit times the number of months for which Total Disability Benefits have been payable.

## 2.4    EXTENSION OF BENEFITS

*Can benefits be extended?*

We can continue to pay Disability benefits beyond the Maximum Benefit Period while You remain Disabled if:

    a.    You were Disabled for the entire Maximum Benefit Period; and
    b.    The sum of all Disability benefits paid during that period is less than the Maximum Total Benefit.

But We will not pay the Disability benefits beyond:

    a.    A total amount equal to the Maximum Total Benefit; or
    b.    A period of 30 months.

## 2.5    PRESUMPTIVE TOTAL DISABILITY BENEFIT

If Injury or Sickness causes You to totally and irrecoverably lose:

    a.    Your speech; or
    b.    Your hearing in both ears; or
    c.    Your sight in both eyes; or
    d.    Use of both hands; or
    e.    Use of both feet; or
    f.    Use of one hand and one foot;

*Can Total Disability be automatically assumed?*

We will presume You to be Totally Disabled as long as such loss continues and whether or not You are able to work or require Physician's Care. We will pay the Total Disability benefit as set forth in the TOTAL DISABILITY BENEFIT section.

## 2.6    PARTIAL DISABILITY BENEFIT

This benefit will begin on the day after Your Total Disability ends.  We will pay it while Your Partial Disability continues but not for more than three straight months during any Disability.  In no event will the benefit payable cause the Maximum Total Benefit to be exceeded.

*What is the Partial Disability benefit?*

The amount of this benefit is equal to 50% of the Maximum Covered Monthly Expense Benefit.

## 2.7   LIMITED RIGHT TO REDUCE BENEFITS

The monthly benefits payable under this Policy may be reduced if You have other coverage for overhead expenses with Us or any other insurer.   The Covered Monthly Expense will be reduced as follows:

a. The Covered Monthly Expense multiplied by
b. The Maximum Covered Monthly Expense Benefit divided by the total of:
   -the Maximum Covered Monthly Expense Benefit; plus
   -the maximum monthly benefits payable under all other overhead expense policies.

The Covered Monthly Expense will equal:

$$\text{Covered Monthly Expense X} \frac{\text{Maximum Covered Monthly Expense Benefit}}{\text{Maximum monthly benefit of all policies}}$$

*Can We reduce benefits if you have other overhead expense coverage?*

## 2.8   CONVERSION PRIVILEGE

At any time before You reach age 60, You may ask to convert this Policy to one of Our disability income policies providing substantially equivalent benefits if:

a.   This Policy is then in force; and
b.   You send Us a written request; and
c.   You have not been Disabled for the six months just prior to the request for conversion.

Payment of benefits under our disability income policies does not depend on the Covered Monthly Expense You incur.

You may elect the monthly amount of the benefit under the new policy, but that monthly amount cannot exceed:

a.   25% of the Maximum Covered Monthly Expense Benefit shown on the Policy Schedule; or
b.   $2000;

whichever is less.

And in no event can the monthly amount of the benefit, when added to similar benefits under all disability income coverage You have with any company, exceed Our limits.   By "limits" We mean the maximum disability income coverage We offer to new applicants of Your class of risk according to Our issue and participation limits in effect at the time of Your request.

For purposes of the INCONTESTABLE clause, the Date of issue of the new policy will be the same as for this Policy. Except for that, the Date of Issue of the new policy will be the date We receive Your written request at Our Home Office.

The premium for the new policy will be the rate We charge for Your class of risk and age on the Date of Issue of the new Policy.

The new policy will cover only losses occurring while it is in force. It will exclude only conditions excluded by this Policy.

*When can this coverage be converted to loss of time coverage?*

EXHIBIT 1                                        35



## PART 3
## EXCLUSIONS

*What if Disability results from war or normal pregnancy?*

### 3.1   EXCLUSIONS

We will not pay Policy benefits:

    a.  Due to an act or accident of war, whether declared or undeclared; or

    b.  Due to normal pregnancy or childbirth, except as described in the definition of "Sickness".

    c.  For any period You are incarcerated.

### 3.2   PRE-EXISTING CONDITIONS LIMITATION

*What if Disability results from a Pre-existing Condition?*

We will not pay benefits for a Pre-existing Condition if it was not disclosed on Your application. Pre-existing Condition means a sickness or physical condition for which prior to the Date of Issue:

    a.  Symptoms existed that would cause an ordinarily prudent person to seek diagnosis, care, or treatment; or

    b.  Medical advice or treatment was recommended by or received from a Physician.

Also, We will not pay benefits for any loss We have excluded by name or specific description.

## PART 4
## PREMIUM AND REINSTATEMENT

### 4.1   PAYMENT OF PREMIUM

*When are premiums due?*

The first premium on Your Policy is payable on the Date of Issue.  After that, premiums are payable in the amount and mode shown on the Policy Schedule.   Payment may be made at Our Home Office, 18 Chestnut Street, Worcester, Massachusetts 01608 or to Our agent.

Premiums may be paid annually or semi-annually.  If Our rules permit it, You can pay the premiums quarterly or monthly.  We will allow You to change this by written request.  But We will not allow a change while You are Disabled.

### 4.2   GRACE PERIOD

*What happens if a premium payment is late?*

After the first premium has been paid, a grace period of 31 days is allowed for late payment of premium.  Your Policy will remain in force during the grace period.

If the premium is not paid when it is due or within the grace period, the Policy will lapse.

EXHIBIT 1     36

### 4.3   REINSTATEMENT

If Your Policy lapses because the premium is not paid when due or within the grace period, it will be reinstated if We or Our agent accepts payment of the premium without requiring a reinstatement application.

If We receive the premium due at Our Home Office within 57 days from the date the premium was due, We will not require evidence of Your insurability.

If We receive the premium after 57 days, We will require a reinstatement application.   We will issue You a conditional receipt for the premium.   If We approve Your application, the Policy will be reinstated as of the date of Our approval.   If We disapprove Your application, We must do so in writing within 45 days of the date of the conditional receipt or the Policy will be reinstated on the 45th day.

The reinstated Policy will cover only loss due to:
    a.   Injury sustained after the date of reinstatement; or
    b.   Sickness that begins more than ten days after such date.

Except for this and any new provisions that are added to the reinstated Policy, Your rights and Our rights will be the same as before the Policy lapsed.

*How can a lapsed Policy be reinstated?*

### 4.4   PREMIUM REFUND AT DEATH

Upon notice of your death, We will make a pro rata refund of any premium paid for a period beyond the month of Your death.

*Is there any premium refund at death?*

## PART 5
## WAIVER OF PREMIUM

### 5.1   WAIVER OF PREMIUM

After You have been Totally Disabled for 90 days, We will waive any premium that becomes due while You remain Totally Disabled.   Your Policy and its benefits will continue as if the premium had been paid.

We will also refund any premium that became due and was paid during those first 90 days of Total Disability.

When You are no longer eligible for Waiver of Premium, You can continue Your Policy in force by paying the next premium that becomes due.

*When will premiums be waived?*

## PART 6
## RECURRENT AND CONCURRENT DISABILITY

### 6.1   RECURRENT DISABILITY

If after the end of a Disability You become Disabled from the same or related causes, We will deem it a separate Disability.   But if such recurrence occurs within 6 months of the end of the prior period, We will deem it a continuation of the prior Disability.

Such periods of Recurrent Disability separated by 6 months or less will be deemed to be continuing in order to determine the Commencement Date and maximum period and amounts payable.

*What if a Disability reoccurs?*

### 6.2   CONCURRENT DISABILITY

If a Disability is caused by more than one Injury or Sickness, or from both, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

*What if a Disability is due to two causes at the same time?*

EXHIBIT 1

## PART 7
## RENEWAL OPTION

### 7.1    RENEWAL OPTION

After Your 65th birthday You may continue Your Policy for the Total Disability benefit while:

a.   You are actively and regularly employed at least 30 hours per week; and

b.   You are responsible for the expenses of maintaining an office or business; and

c.   The premium is paid on time.  The premium will be at the rate in effect for Your rating group on each due date.

*Can this Policy be renewed after age 65?*

We can require proof after Your 65th birthday that You have continued to be actively and regularly employed full time.

The Policy must be in force when You elect this option.

If You elect this option, and Total Disability starts before age 75, We will pay the same benefits subject to the same provisions, exceptions, and limitations in the Policy.  See Section 7.2 for Total Disability starting as of age 75.

Any premium paid after Your 65th birthday for a period not covered by Your Policy under this option, will be returned to You.

### 7.2    TOTAL DISABILITY BENEFIT - REDUCED AT AGE 75

*Will benefits be reduced after age 75?*

For Total Disability starting on or after Your 75th birthday, Your Maximum Covered Monthly Expense Benefit and the Maximum Total Benefit will be reduced by 50% of the benefits shown on the Policy Schedule.  But, the Maximum Benefit Period will remain the same.

## PART 8
## CLAIMS

### 8.1    TIME OF LOSS

*When must losses occur?*

All losses must occur while Your Policy is in force.  But termination of Your Policy will not affect any claim for Total Disability that begins within 30 days of the date of an injury causing such Disability.

### 8.2    WRITTEN NOTICE OF CLAIM

*When must written notice be given?*

Written notice of claim must be given to Us within 30 days after a covered loss starts. If this cannot be done, then notice must be given as soon as reasonably possible.

The notice will be sufficient if it identifies You and is sent to Our Home Office, 18 Chestnut Street, Worcester, Massachusetts 01608 or is given to Our agent.

### 8.3    CLAIM FORMS

*Is there a form for proof of loss?*

After We receive the written notice of claim, We will send You Our proof of loss forms within 15 days.  If We do not, You will meet the written proof of loss requirements if You send Us, within the time set forth below, a written statement of the nature and extent of Your loss.

-13-

EXHIBIT 1                38

**8.4    WRITTEN PROOF OF LOSS**

Written proof of loss must be sent to Us within 90 days after the end of each period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated, written proof must be given within one year.

We can also require reasonable proof from You of Your Covered Monthly Expense. This may include personal and business tax returns filed with the Internal Revenue Service, financial statements, accountant's statements or other proof acceptable to Us or which We may require. We can have an audit performed as often as is reasonably required while Your claim is continuing. Such an audit will be at Our expense.

**8.5    TIME OF PAYMENT OF CLAIMS**

After We receive written proof of loss:

    a.  We will pay any benefits then due that are not payable periodically; and

    b.  We will pay at the end of each 30 days any benefits due that are payable periodically - subject to continuing proof of loss.

**8.6    PAYMENT OF CLAIMS**

All benefits will be paid to the Owner. But if any benefit is payable to Your estate or if You are not competent to give a valid release, We can pay up to $1,000 to one of Your relatives who We believe is entitled to it. If We do that in good faith, We will not be liable to anyone for the amount We pay.

**8.7    EXAMINATIONS**

At Our expense, We can have a Physician of Our choice examine You as often as reasonably required while Your claim is pending.

**8.8    MISSTATEMENT OF AGE**

If Your age has been misstated, the benefits under the Policy will be those that the premium You paid would have purchased at Your correct age.

**PART 9
THE CONTRACT**

**9.1    ENTIRE CONTRACT; CHANGES**

This Policy (with the application and attached papers) is the entire contract between You and Us. No change in this Policy will be effective until approved by a Company officer. This approval must be noted on or attached to this Policy. No agent may change this Policy or waive any of its provisions.

*When must written proof of loss be submitted?*

*When will benefits be paid?*

*To whom will benefits be paid?*

*Can there be an independent medical exam performed?*

*What if there is a misstatement of age?*

*Can the Policy be changed?*

EXHIBIT 1                                    39

**For how long is the Policy contestable?**

**9.2    INCONTESTABLE**

    a.   After Your Policy has been in force for 3 years, excluding any time You are Disabled, We cannot contest the statements in the application.

    b.   No claim for loss incurred or Disability beginning after 3 years from the Date of Issue will be reduced or denied because a disease or physical condition existed before the Date of Issue unless it is excluded by name or specific description.

**What if the Policy differs with state requirements?**

**9.3    CONFORMITY WITH STATE STATUTES**

Any provisions in this Policy which, on its Date of Issue, conflicts with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

**When can legal action be brought under this Policy?**

**9.4    LEGAL ACTION**

You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after three years from the date written proof of loss is required to be given.

EXHIBIT 1

40

## FUTURE COVERED EXPENSE OPTION BENEFIT RIDER

**DEFINITIONS.** In this Rider:

*"Maximum Benefit"* means the Maximum Covered Monthly Expense benefit for Total Disability payable under Your Policy to which this Rider is added. That amount is shown on the Policy Schedule.

*"Option Date"* means each even-numbered anniversary of the Date of Issue that occurs on or before the Expiration Date.

*"Unit of Increase"* is an amount by which the Maximum Benefit can be increased on an Option Date. That amount is shown on the Policy Schedule. The maximum number of Units of Increase is also shown on the Policy Schedule.

*"Expiration Date"* is the date this Rider ends. That date is shown on the Policy Schedule.

*"Incurred Expense"* means Your average Covered Monthly Expense for the year just before the date of Your request for an increase in the Maximum Benefit.

All definitions in Your Policy apply to this rider. All provisions of Your Policy remain the same except where We change them by this rider.

### FUTURE COVERED EXPENSE OPTION BENEFIT.

You may apply for up to one Unit of Increase as of any Option Date. You may apply for part of a Unit of Increase as of any Option Date.

If all or part of a Unit of Increase is not used as of an Option Date, You may carry it over and apply for it on the next Option Date. But You cannot carry it over beyond that Option Date.

On any Option Date prior to age 42, You may also apply for up to one added Unit of Increase if You are not Disabled and You exercise all of Your current Unit of Increase. This added Unit of Increase may not be exercised more than once.

To use all or part of a carried-over Unit of Increase You must also exercise all of Your current Unit of Increase. The total number of Units of Increase exercised can never exceed the maximum number of Units of Increase shown on the Policy Schedule.

If You qualify, We will increase Your Maximum Benefit by the amount for which You apply.

H876

91-1

EXHIBIT 1                    41

## TO QUALIFY FOR AN INCREASE.

You will qualify for an increase if, at the time You apply:

1. Your Incurred Expense is sufficient for an increase. This will be determined by Our published underwriting rules and issue and participation limits in effect at the time You apply; and
2. The sum of all of Your business overhead expense coverage, after the increase, is not more than the maximum coverage We offer to new applicants of Your class of risk. This will be determined by Our published underwriting rules and issue and participation limits in effect at the time You apply. We will figure the sum of Your business overhead expense coverage by adding up the benefits You would receive from Us and any other insurer.

We may require proof of Your Incurred Expense. This could include income tax returns or other proof which We may require.

## APPLICATION FOR AN INCREASE.

You may apply for an increase as of any Option Date. We will send You an application form. This form must be completed and returned to us within 60 days before the Option Date. This form will ask You for a statement of Your Incurred Expense and business overhead expense coverage. This form will not ask You for proof of good health.

You may apply for no more than one Unit of Increase during any continuing disability.

## WHEN AN INCREASE IS EFFECTIVE.

An increase in Your Maximum Benefit under this rider will be effective as of the applicable Option Date. But if the Option Date upon which an increase is elected occurs while You are disabled, We will begin to pay the increased Maximum Benefit on the ninety-first day of continuous disability after that Option Date. We will pay the increased Maximum Benefit while Your disability continues and while the Maximum Benefit is payable.

## THE PREMIUM.

The premium for each increase will be at the rate for Your age at Your nearest birthday on the applicable Option Date. We will figure this according to either:

1. Your class of risk when We issued Your Policy; or
2. Your class of risk on the Option Date of the increase;

whichever is more favorable to You.

Also, if the premium for Your Policy is being waived on the Option Date, You will not have to pay the premium for the increase until the premium for Your Policy becomes payable again.

You must make the first payment of the premium for an increase to Our Home Office or to Our agent. This must be done no later than 31 days after the Option Date.

-2-

EXHIBIT 1                    42

## TERMINATION.

This rider will end when one of the following happens:

1. The Expiration Date for this rider; or
2. When the total of all increases in the Maximum Benefit equals the value of the maximum Units of Increase shown on the Policy Schedule; or
3. A premium for the Policy or this rider is not paid on time; or
4. Upon Your written request to end this rider. In that case, You must return the Policy to Us. We will make the proper endorsement and return the Policy to You.

The annual premium for this Rider is shown in the Policy Schedule.

The Date of Issue of this Rider is the same as that of Your Policy. If We issued this Rider after Your Policy, the Date of Issue is shown on the Policy Change form issued with this Rider.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John H. Budd        Charles E. Soule*

Secretary                     President

**EXHIBIT 1**                                    43

**THE PAUL REVERE LIFE INSURANCE COMPANY**

PLICATION FOR
ABILITY INSURANCE TO:

WORCESTER, MA 01608

Nº 206349

| a. Name (Print): YSASAGA MICHAEL A | b. Soc. Sec. # 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 |
| (incl. Prof. Title) DDS  Last     First     MI | c. Ht. 6'0"  d. Wt. 180 |

| e. Sex M ☒ F ☐ | f. Birthdate: 2.15.63 | g. Age (nearest): 30 | h. Birthplace (State) CALIF |

i. Residence Address: 865 Brandenbury Ln Chico CA 95926 916 891-8302
   Street          Apt. #   City      State   Zip      Phone

j. Business Address: 676 East 1st Ave  Chico CA 95926 916 893-0738

2a. Occupation: DENTIST | b. Employer: 1st Avenue Dental

c. Exact duties: Patient care

d. Length of current employment: 1 mos | e. Nature of Employer's business: dental practice

f. If owner, percentage owned: 100% | Length of Ownership: 1 mos | # full time employees: 2

g. Type of Business Entity: Sole Proprietor ☒ Partnership ☐ Corporation ☐ Other ☐ describe:

3. Have you within the past **2 years** engaged in motorcycle riding, scuba diving, racing or any similar sport or avocation? Yes ☐ No ☒ If "yes" give details:

4. Have you smoked cigarettes in the past **12 months**? Yes ☐ No ☒

5. Have you been actively at work full-time for the past **6 months**? Yes ☒ No ☐ If "No" give details:

6. Have you **ever** been treated for or had any known indication of: (*Circle* all conditions that apply and give details below)
   a. Chest pain, high blood pressure, mental or emotional disorder, arthritis, diabetes, cancer, tumor, or fainting spells? Yes ☐ No ☒
   b. Disease or disorder of the heart or circulatory system, lungs, kidneys, bladder, genital or reproductive organs, brain or nervous system, skin, eyes, ears or speech? Yes ☐ No ☒
   c. Disease or disorder of the stomach or intestines, liver, thyroid, bones, muscles, joints, back or neck? Yes ☐ No ☒
   d. Complications of pregnancy? Yes ☐ No ☐ Are you currently pregnant? Yes ☐ No ☐ Due date:

7. In the past **5 years**, have you had any medical advice or operation, physical exam, treatment, illness, abnormality or injury not listed above? Yes ☒ No ☐   Are you currently receiving any medical advice or treatment? Yes ☐ No ☒

8. Have you **ever** used stimulants, hallucinogens, narcotics or any controlled substance other than prescribed by a physician, or been counseled or treated for excess use of alcohol or drugs? Yes ☐ No ☒

9. Give details to all "Yes" answers to 6, 7 or 8. Include exact diagnoses, dates, duration, physicians and addresses.
   1. PE for insurance purposes - life
   No personal MD - new to the area

10. In the past **5 years** have you had any insurance application rejected or modified or received or been refused any disability or medical benefits? Yes ☐ No ☒ If "yes" give details:

| 11. Fill in amounts as Reportable for Federal Tax purposes | Estimated Current Annual Rate | Actual Last year 19 92 | Actual 2 Years Ago 19 91 |
|---|---|---|---|
| a. Salary, Fees, Commissions & Bonus | $275000 | $65000 | $ |
| b. Pension and Profit Sharing Contributions | | | 4/ |
| c. Earnings from other occupations (describe): | | | SCA |
| d. Total Earnings (a + b + c) | | | |
| e. Deductible Business Expenses | 140000 | | |
| f. NET EARNED INCOME (d – e) | 350 00 | 65000 | |

12. List Net worth (assets minus liabilities), if more than $750,000: $ n/a   n/a

13. List unearned income (interest, dividends, capital gains, rent, etc.), if more than $15,000 per year: $ n/a

App 64 CA

86-4

EXHIBIT 1   44

4. Describe all disability coverage in force; and all coverage applied for in the ~t 12 months. Indicate if it is:
A) Individual, B) Social Security Substitute, C) Association, D) Group, E) Salary Continuation, F) Overhead Expense, or
G) Buy-Out. If none, write "none".

| Company or Source If Paul Revere, give Pol. # If pending, check —— | Type (A,B,C, etc.) | Monthly Amount | Elim. Period | Benefit Period | Will coverage be Replaced/Changed or Madeover? | Effective Date of Discontinuance |
|---|---|---|---|---|---|---|
| NONE | | | | | Yes ☐ No ☐ | |
| | | | | | Yes ☐ No ☐ | |
| | | | | | Yes ☐ No ☐ | |
| | | | | | Yes ☐ No ☐ | |

5. Describe Coverage Being Requested (If BOE, complete supplement):

| Plan Code: 990 X | Monthly Amt. | Elim. Period | Benefit Period | Form # | Optional Benefits Amount | Form # | Amount |
|---|---|---|---|---|---|---|---|
| Base | 3500 | 90 | 65 | 875 | 1000 | | |
| AMI | | wldon occ | | A1B | 5% | | |
| AMI | | | | own occ | | | |
| SSIB | | | | 874 | | | |

6. a. Will requested coverage be paid for by employer? Yes ☐ No ☒ If "yes" how much? _____ %
Will employer's contribution be included in your taxable income? Yes ☐ No ☐
   b. List name and address of proposed owner if other than proposed insured _____ n/a
   c. Send notices to:     Residence ☐     Business ☒                     125.00 DI
   d. Collected with this application in exchange for Conditional Receipt: $ 114.00 BOE

**CORRECTIONS AND AMENDMENTS (For Home Office Use Only)**
App 64 supp #9 owner is insured

It is understood and agreed as follows:
1) I have read the statements and answers recorded above. They are, to the best of my knowledge and belief, true and complete and correctly recorded. They will become part of this Application and the basis for any policy issued on it.
2) I will permanently discontinue all policies shown to be discontinued in answer to question 14 on or before the dates indicated. If not, benefits under any policy issued on this application may be reduced by the amount payable under such existing policies.
3) No agent or broker has authority to waive the answer to any question, to determine insurability, to waive any of the Company's rights or requirements, or to make or alter any contract or policy.
4) The insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while the health of the Proposed Insured remains as stated in the Application. The only exception to this is the insurance provided in the Conditional Receipt detached herefrom and issued if at least the Minimum Deposit is made with the Application.
5) Acceptance by the Proposed Insured/Owner of any policy issued on this Application will ratify any changes listed under "Corrections and Amendments"; except that no changes may be made as to Classification, Age at Issue, Form of Insurance, Amount or Benefits unless agreed to in writing by the Proposed Insured/Owner.

Signed at _Chico, CA_                                 Date _6/2_         19_93_

I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

Witness _____                                 X _____
Licensed Agent or Broker                          Signature of Proposed Insured

                                               X _____
                                               Signature of Proposed Owner (if applicable)

**Applicants will be informed whether or not their application has been accepted within 60 days or be given the reason for any further delay.**

PAGE 2

**EXHIBIT 1**                                                    45



**THE PAUL REVERE LIFE INSURANCE COMPANY**

### BUSINESS INSURANCE SUPPLEMENT TO APPLICATION FOR DISABILITY INSURANCE

Select the Business Insurance Policy(ies) for which you wish to apply:

☒ Business Overhead Expense (Complete all sections)   ☐ Disability Buy-Out (Complete Section 1, 2, 9 and 10)   ☐ Other

1. a. Name  Ysasaga    Michael    A
     Last         First         MI

   b. Soc. Sec. #  555 - 55 - 4098
   c. Birthdate:  2 . 15 . 63

2. Describe Business Insurance Coverage Being Requested

| Plan Code | Indicate Base or AMI | Lump Sum or Monthly Amt. | Elim. Period | Benefit Period | Form # | OPTIONAL BENEFITS Amount | Form # | Amount |
|---|---|---|---|---|---|---|---|---|
| 908 | BASE | 6000 | 30 | 15 | A1B | 5% | | |
| | | | | | 876 | 1000 | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

3. Complete if applying for $1000 or more of coverage. Use your actual current average **monthly** expenses. **Exclude any** payments to yourself or to any other member of your profession. In the event of shared ownership, include **only** your share of the expenses below.

Rent . . . . . . . . . . . . . . . . . . . . . .  636

Building Ownership Expenses:

   Mortgage Interest . . . . . . . . . . . . . .

   Real Estate/Property Taxes . . . . . . . .

Utilities . . . . . . . . . . . . . . . . . . . .  652

Telephone . . . . . . . . . . . . . . . . . . .

Equipment Rental . . . . . . . . . . . . . .  89

Accounting/Legal Fees . . . . . . . . . .  221

Insurance:

  Malpractice/Liability . . . . . . . . . . . . . . . . . .  100

  Insurance for Employees . . . . . . . . . . . . . . .  643

  Other . . . . .  EE Ben . . . . . . . . . . . .  253

Depreciation . . . . . . . . . . . . . . . . . . . . . . . . . .

Interest Expense on Business Indebtedness . . . .  350

Compensation to Employees:

  Salaries . . . . . . . . . . . . . . . . . . . . . . . . . .  2431

  Pension/Profit Sharing Contributions . . . . . . . .  200

  Soc. Security/Payroll Taxes . . . . . . . . . . . . . . .

Other normal and customary fixed office expenses such as advertising, office supplies, janitorial service, etc. (If more tha 10% of the total amount requested, please provide full details below.)

Office Supplies  121

Equip Maint / Rent  150

Taxes / Licenses  162

Laundry  78

Postage  88

App 64 Supp.

**EXHIBIT 1**                                46

4. Are your office expenses shared with anyone?     Yes ☐     No ☒

   If yes, what percent of the total expenses are you responsible for? _____ %

5. Do you own all or part of the building in which your business is located?     Yes ☐     No ☒

   If yes, is it owned by you as an individual or by your business? _____

6. Are there any other members of your profession or a related profession, employed by you or associated with your business?     Yes ☐     No ☒          If yes, how many? _____

7. If total amount to be in force exceeds $15,000, please list each employee's title, duties and income?

   _____

   _____

   _____

   _____

8. Beneficiary: (Print full name)

| 8. Beneficiary: (Print full name) | Relationship: | Birthdate: |
|---|---|---|
| Melanie Ysasaga | Wife | 3.18.64 |

9. List name and address of proposed owner if other than proposed insured __N/A__

10. **It is understood and agreed as follows:**

(1) I have read the statements and answers recorded above. They are, to the best of my knowledge and belief, true and complete and correctly recorded. The Company will rely on them to determine the amount, if any, of Business Insurance coverage it will issue.

(2) This Supplement will become a part of my application for insurance and any policy issued on it.

Signed at __Chico, CA__          Date __June 2__          19 __93__

Witness _____          X _____
         Licensed Agent or Broker                    Signature of Proposed Insured

                                          X _____
                                          Signature of Proposed Owner (if applicable)

__REMARKS__ Using Dr. Van Mierlo's Sch. C however Dr. Ysasaga has hired 1 add'l FT ee for 1250mo + payroll taxes etc.

EXHIBIT 1          47

| SHORT TITLE: Ysasaga v. The Paul Revere Life Insurance Company | CASE NUMBER | BC 6 1 7 3 5 2 |
|---|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☐ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 5-7 _____ HOURS/XDAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.3.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office
11. Mandatory Filing Location (Hub Case)

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| Auto<br>Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

| LACIV 109 (Rev 3/15)<br>LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | Local Rule 2.3<br>Page 1 of 4 |
|---|---|---|

**EXHIBIT 1**

48

| SHORT TITLE: Ysasaga v. The Paul Revere Life Insurance Company | | CASE NUMBER | |

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1., 2., 3. |
| | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109 Labor Commissioner Appeals | 10. |
| Breach of Contract/ Warranty<br>(06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 2., 5., 6, 11 |
| | ☐ A6012 Other Promissory Note/Collections Case | 2., 5, 11 |
| | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☒ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009 Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031 Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2., 6. |
| | ☐ A6032 Quiet Title | 2., 6. |
| | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

Left margin category labels:
Non-Personal Injury/ Property Damage/ Wrongful Death Tort
Employment
Contract
Real Property
Unlawful Detainer

LACIV 109 (Rev 3/15)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

EXHIBIT 1     49

| SHORT TITLE: Ysasaga v. The Paul Revere Life Insurance Company | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141 Sister State Judgment | 2., 9. |
| | | ☐ A6160 Abstract of Judgment | 2., 6. |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121 Civil Harassment | 2., 3., 9. |
| | | ☐ A6123 Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190 Election Contest | 2. |
| | | ☐ A6110 Petition for Change of Name | 2., 7. |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100 Other Civil Petition | 2., 9. |

LACIV 109 (Rev 3/15)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

EXHIBIT 1

50

| SHORT TITLE: Ysasaga v. The Paul Revere Life Insurance Company | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.  □ 1. ☒ 2. □ 3. □ 4. □ 5. □ 6. □ 7. □ 8.  9.  10.  11. | ADDRESS: 301 N .Canon Drive |
|---|---|
| CITY: Beverly Hills | STATE: CA | ZIP CODE: 90010 |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk_____ courthouse in the Central_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.3, subd.(a).

Dated: April 15, 2016_____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/15).
5. Payment in full of the filing fee, unless fees have been waived.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| LACIV 109 (Rev 3/15)  LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION | Local Rule 2.3  Page 4 of 4 |
|---|---|---|

EXHIBIT 1          51

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

CONFORMED COPY Stamp
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 18 2016

Sherri R. Carter, Executive Officer/Clerk
By Cristina Grijalva, Deputy

**COURT ADDRESS:**
111 N. Hill Street, Los Angeles, CA 90012

**PLAINTIFF:**
Michael Ysasaga

**DEFENDANT:**
The Paul Revere Life Insurance Company, et al.

**CIVIL DEPOSIT**

**CASE NUMBER:** BC 617352

CLERK: PREPARE A FORM FOR EACH DEPOSITOR PAYING SEPARATELY

**PLEASE REPORT TO THE CLERK'S OFFICE/CASHIER:**
☐ Room 102, Central Civil  ☐ Clerk's Office , Room_____  ☐ Department Number_____

| | | Distribution Codes | Amt Due | | | Distribution Codes | Amt Due |
|---|---|---|---|---|---|---|---|
| ☐ | 251 | DAILY JURY FEES  Dates:_____  # of day(s)_____ x$_____ | | ☐ | 74 | DEPOSIT IN TRUST | |
| ☒ | 72 | JURY FEES  Trial Date:_____  (Initial Deposit) $ 150.00 | 150.00 | ☐ | 101 | FIRST PAPERS- GENERAL JURISDICTION | |
| ☐ | 252 | REPORTERS FEES  Dates:_____  # of 1/2 day(s)_____ x$_____  Full Day | | ☐ | 101 | FIRST PAPERS-LIMITED OVER $10,000 | |
| | | | | ☐ | 141 | With declaration Limited to $10,000 (per B&P 6322.1(a)) | |
| | | | | ☐ | 130 | Limited to $10,000 | |
| ☐ | 721 | SANCTIONS ORDERED ON  Date:_____ | | ☐ | 211 | RECLASSIFICATION FEE | |
| ☐ | 213 | MOTIONS/APPLICATION TO CONT. HEARING | | ☐ | 150 | COMPLEX LITIGATION TRIAL/PLAINTIFF | |
| | 200 | MOTIONS/APPLICATION TO CONT.TRIAL | | ☐ | 151 | COMPLEX LITIGATION TRIAL/DEFENDANT | |
| | | Other: | | | | | |

To be paid via: ☐ Cash  ☐ Check  ☐ Certified Check/Money Order  ☐ Credit Card

☐ On or Before_____  ☐ Forthwith

Payment will be made by  ☐ Plaintiff_____  ☐ Defendant_____

JOHN A. CLARKE, Executive Officer/Clerk

DATE _____  BY: _____

Deputy Clerk

**TO BE COMPLETED BY DEPOSITOR**  |  **CASHIER'S VALIDATION**

Depositor's Name: _____

☐ Plaintiff in Pro Per  ☐ Defendant in Pro Per

☒ Counsel for  ☒ Plaintiff  Michael Ysasaga
                              Name of Party

☐ Defendant _____
                Name of Party

Address of depositor  301 N. CANON DRIVE, SUITE 200
                       Street
                       BEVERLY HILLS, CA 90210
                       City/State/Zip

CIV 083 03-04 (Rev. 05/06)
LASC Approved

**CIVIL DEPOSIT**
Distribution: Original - Case File  Copy-Customer

EXHIBIT 1

52

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)

Case Number

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT        BC 6 1 7 3 5 2

Your case is assigned for all purposes to the judge indicated below. There is more information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Kevin C. Brazile | 1 | 534 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Terry A. Green | 14 | 300 | Hon. Teresa A. Beaudet | 50 | 508 |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael J. Raphael | 51 | 511 |
| Hon. Rita Miller | 16 | 306 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Steven J. Kleifield | 53 | 513 |
| Hon. Stephanie Bowick | 19 | 311 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Dalila Corral Lyons | 20 | 310 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Michael Johnson | 56 | 514 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. John P. Doyle | 58 | 516 |
| Hon. Barbara Scheper | 30 | 400 | Hon. Gregory Keosian | 61 | 732 |
| Hon. Samantha Jessner | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Daniel S. Murphy | 32 | 406 | Hon. Mark Mooney | 68 | 617 |
| Hon. Michael P. Linfield | 34 | 408 | Hon. William F. Fahey | 69 | 621 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Suzanne G. Bruguera | 71 | 729 |
| Hon. Marc Marmaro | 37 | 413 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Rafael Ongkeko | 73 | 733 |
| Hon. Elizabeth Feffer | 39 | 415 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Michelle R. Rosenblatt | 40 | 414 | Hon. Gail Ruderman Feuer | 78 | 730 |
| Hon. Holly E. Kendig | 42 | 416 | | | |
| Hon. Mel Red Recana | 45 | 529 | Hon. Emilie H. Elias | 324 | CCW |
| Hon. Frederick C. Shaller | 46 | 500 | *Provisionally Complex Non-class Action Cases Assignment is Pending Complex Determination | 324 | CCW |
| Hon. Debre K. Weintraub | 47 | 507 | | | |

*Complex

All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on APR 1 8 2016        SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV CCH 190 (Rev 02/16)        NOTICE OF CASE ASSIGNMENT —        Page 1 of 2
LASC Approved 05-06                UNLIMITED CIVIL CASE

EXHIBIT 1

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Three Rules were effective January 1, 1994.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts.  These matters may be heard and resolved at this conference.  At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

LACIV CCH 190 (Rev05/14)
LASC Approved 05-06
For Optional Use

NOTICE OF CASE ASSIGNMENT —

UNLIMITED CIVIL CASE

Page 2 of 2

**EXHIBIT 1**

54

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**

**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

EXHIBIT 1                    55

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

STIPULATION – DISCOVERY RESOLUTION

Page 1 of 3

**EXHIBIT 1**

56

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 2 of 3

EXHIBIT 1

57

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____     _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR PLAINTIFF)

Date:

_____     _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR DEFENDANT)

Date:

_____     _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR DEFENDANT)

Date:

_____     _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR DEFENDANT)

Date:

_____     _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR _____)

Date:

_____     _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR _____)

Date:

_____     _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR _____)

EXHIBIT 1

58

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

**STIPULATION – EARLY ORGANIZATIONAL MEETING** Page 1 of 2

**EXHIBIT 1**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

   h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

   i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lasuperiorcourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
        (INSERT DATE)                                (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lasuperiorcourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____     ➢   _____
        (TYPE OR PRINT NAME)                           (ATTORNEY FOR PLAINTIFF)
Date: _____

_____     ➢   _____
        (TYPE OR PRINT NAME)                           (ATTORNEY FOR DEFENDANT)
Date: _____

_____     ➢   _____
        (TYPE OR PRINT NAME)                           (ATTORNEY FOR DEFENDANT)
Date: _____

_____     ➢   _____
        (TYPE OR PRINT NAME)                           (ATTORNEY FOR DEFENDANT)
Date: _____

_____     ➢   _____
        (TYPE OR PRINT NAME)                           (ATTORNEY FOR _____)
Date: _____

_____     ➢   _____
        (TYPE OR PRINT NAME)                           (ATTORNEY FOR _____)
Date: _____

_____     ➢   _____
        (TYPE OR PRINT NAME)                           (ATTORNEY FOR _____)

**EXHIBIT 1**        60

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: | FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

EXHIBIT 1

61

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

**The parties agree that:**

1.  At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2.  The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

    a.  Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

    b.  Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3.  All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

**EXHIBIT 1**

62

| COURT TITLE | CASE NUMBER |
|---|---|
|  |  |

**The following parties stipulate:**

Date: _____  ⟩ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR PLAINTIFF)

Date: _____  ⟩ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____  ⟩ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____  ⟩ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____  ⟩ (ATTORNEY FOR _____)
  (TYPE OR PRINT NAME)

Date: _____  ⟩ (ATTORNEY FOR _____)
  (TYPE OR PRINT NAME)

Date: _____  ⟩ (ATTORNEY FOR _____)
  (TYPE OR PRINT NAME)

**THE COURT SO ORDERS.**

Date: _____        _____
                                              JUDICIAL OFFICER

LACIV 075 (new)        **STIPULATION AND ORDER – MOTIONS IN LIMINE**        Page 2 of 2
LASC Approved 04/11

EXHIBIT 1                                                                          63